IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAYNELLE BORDLEY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CENTRAL MONTGOMERY | : | |
| MENTAL HEALTH/MENTAL | : | |
| RETARDATION CENTER, | : | No. 12-2479 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                                    April 9, 2013

Shaynelle Bordley claims that her former employer, Central Montgomery Mental Health/Mental Retardation Center ("Central"), discriminated against her on the basis of race by assigning her predominantly African-American clients, then fired her for complaining about the discrimination. Before the Court is Defendant's motion for summary judgment which, for the reasons set forth below, the Court will grant.

I.      BACKGROUND

Central hired Plaintiff on November 2, 2009, as a therapist in Central's family based services ("FBS") division. (Def.'s Statement of Undisputed Facts [Def.'s SOF] ¶ 2.) Beginning in January 2010, Plaintiff worked as part of a two-person team with her partner, Deborah Larkin. (*Id.* ¶ 4.) Of the six teams comprising the FBS division, Plaintiff's team had the least amount of work experience at Central. (*Id.* ¶ 8.) Bordley was also the only African-American therapist in the FBS division. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts [Pl.'s SOF] at 3.)

In May 2010, Bordley and Larkin became concerned that they were not receiving a racially

diverse caseload and raised this issue at a meeting with their supervisor, Lindsay Roznowski. (Def.'s SOF ¶ 9.) Specifically, Bordley believed that Caucasian clients were more likely to live farther from the office, and that by receiving more Caucasian clients she could bill more for travel time, thereby more easily meeting her billable-hour requirements for bonuses. (Def.'s Mot. for Summ. J. Ex. A [Pl.'s Dep.] at 43-44, 48-49.) Roznowski informed Plaintiff's team that their assignments had been based on their lack of experience, and she had simply given them less complicated cases because they were the newest team; however, Roznowski said that she would attempt to assign Plaintiff's team more diverse cases in the future. (Def.'s SOF ¶¶ 17-18.) Shortly after Plaintiff's team raised this concern, Roznowski assigned Plaintiff to work on a high crisis case involving a Caucasian family. (*Id.* ¶ 21.)

Bordley and Larkin experienced difficulties working with each other. (*Id.* ¶ 28.) For example, Larkin complained about Bordley spending excessive time on the phone and not completing her share of paperwork. (*Id.* ¶ 29.) Bordley complained that Larkin was too aggressive when interacting with clients and that Bordley performed more work than Larkin because Larkin spent too much time on the phone discussing her daycare issues. (*Id.*)

On November 2, 2010, the team problems escalated. While Larkin and Bordley were at a movie theater with clients, Bordley became upset with Larkin for not saving her a seat and called Roznowski to complain. (*Id.* ¶ 31.) Following the movie, Bordley and Larkin returned to Central's office, where Bordley requested to speak with Roznowski about the movie theater incident. (*Id.* ¶ 32.) The discussion eventually devolved into Bordley and Larkin arguing loudly in Roznowski's office. (*Id.*) Despite Roznowski's attempts to calm Bordley and Larkin, they continued to argue and interrupt her repeatedly. (*Id.*) Roznowski and other witnesses reported Bordley and Larkin to

2

Central's director of outpatient services, Kate Walsh, for fighting. (*Id.* ¶ 33.) On November 9, 2010, Roznowski presented Bordley and Larkin with a written warning related to the theater incident, and asked them to sign the warning. (*Id.* ¶ 35.) Both parties refused to sign the warning, and instead offered an altered version to Roznowski that omitted details of the incident. (*Id.* ¶¶ 36-37.) The next day, Bordley and Larkin requested a meeting with Roznowski to discuss the revised warning. (*Id.* ¶ 39.) When Roznowski told them she would discuss the warning next week, Bordley and Larkin became upset and began arguing again in the office. (*Id.* ¶ 40.) Following the argument, Bordley tried to meet with Walsh, but Walsh advised Bordley that she would meet with her on November 16. (*Id.* ¶ 41.) Central claims that on November 11, after discussing the two fights and the refusal to sign the warning, Roznowski, Walsh, and other Central staff privately decided to terminate Bordley and Larkin. (*Id.* ¶ 42.) On November 12, Larkin provided Roznowski with a letter of resignation. (*Id.* ¶ 43.) On November 16, Bordley met with Walsh and reiterated her concerns about the diversity of her caseload. (Pl.'s SOF at 5.) On November 18, Central terminated Bordley. (Def.'s SOF ¶ 46.)

On May 7, 2012, Bordley filed a complaint alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA") for discrimination and retaliation. Specifically, Bordley claims that "Central engaged in the practice of assigning to her a caseload that consisted of almost entirely African-American 'consumers'" which was inconsistent with Central's policies and her desire to service a racially diverse set of consumers, and that she was terminated because she complained about her caseload. (Compl. ¶¶ 10-12, 25.) She also outlines two "racially-charged" incidents, which consisted of "references to her style of dress (discussing her being 'blinged out') and smelling of her hair in conjunction with comments about same." (*Id.* ¶¶ 17-18.)

Regarding Plaintiff's caseload diversity, Central's records reveal that during Plaintiff's employment she provided services to nine African-American consumers, six Caucasian consumers, and two consumers who identified their race as "other." (*See* Def.'s Mot. for Summ. J. Ex. E [Hunter Aff.].) After May 2010, when Bordley reported she first became concerned about her caseload diversity, Bordley received six cases, two involving Caucasian consumers, three involving African-American consumers, and one involving a client who identified her race as "other." (*See* Def.'s Reply Ex. 2 [May 2010 Records]; *id.* Ex. 3 [Bordley Client Notes].)

## II.  STANDARD

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293

F.3d 655, 665 (3d Cir. 2002).

**III.     DISCUSSION**

    **A.     Discrimination/Disparate Treatment Claims**

Plaintiff asserts discrimination claims under Title VII, § 1981, and the PHRA. The same legal standard applies to race discrimination claims under these three statutes. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267-68 (3d Cir. 2010); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006). Therefore, the Court will analyze Plaintiff's discrimination claims together.

When discrimination claims are based on circumstantial evidence, as they are in this case, the Court must apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jackson v. Temple Univ. Hosp., Inc.*, App. A. No. 11-1011, 2012 WL 4947928, at *2 (3d Cir. Oct. 18, 2012). Under that framework, a plaintiff bears an initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the alleged violation. *Id.* Should the defendant articulate a legitimate reason, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

To survive a motion for summary judgment after a defendant has articulated a legitimate reason for its actions, a plaintiff "must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or

5

determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "To discredit the employer's proffered reason . . . the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765.

Plaintiff argues that Central discriminated against her by failing to provide her with a diverse caseload. Central claims now, consistent with Roznowski's explanation at the time Plaintiff first complained, that race played no part in the distribution of clients to the therapist teams and Plaintiff merely received the simplest cases because Plaintiff's team was the least experienced. (*See* Def.'s SOF ¶¶ 17-18.) Therefore, even assuming that Plaintiff set forth a prima facie claim for discrimination, Central's proffered explanation for Plaintiff's caseload places the burden back on Plaintiff to prove that Central's reason is pretextual. *See Burton*, 707 F.3d at 426.

Plaintiff fails to provide any evidence or facts that discredit Central's explanation that Plaintiff's caseload was a result of her inexperience, rather than her race. The record demonstrates that, throughout the course of her employment, Bordley serviced nine African-American consumers, six Caucasian consumers, and two consumers of a non-specified race. (*See* Hunter Aff.) Following Plaintiff's complaint to Roznowski, she received three new African-American consumers, two Caucasian consumers, and one of a non-specified race. (*See* May 2010 Records; Bordley Client Notes.)

Not only does the record reflect that Plaintiff serviced racially diverse clientele, Plaintiff provides no facts to refute that her caseload was determined by her experience. For example, she fails to establish, or even allege, that other teams received less complicated cases than her team

despite their having more experience. Nor does she provide any information she received during discovery about the racial composition of the clientele serviced by other teams. She also fails to allege that she was treated differently than similarly situated persons who were at a similar experience level. For example, her Caucasian partner, who paralleled her in experience level, received the same clientele and caseload. Lastly, Plaintiff does not dispute that, following Plaintiff's complaint about her caseload, Roznowski attempted to address Plaintiff's concerns by assigning her a high crisis, complex case involving a Caucasian family. (*See* Def.'s SOF ¶ 21.) Because of Plaintiff's failure to provide facts to support that Central's proffered reason is pretextual, the Court dismisses her discrimination claims.

> **B.** **Retaliation Claims**

To establish a prima facie case of retaliation, a plaintiff must provide evidence that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Moore*, 461 F.3d at 340-41. Once a plaintiff sets forth a prima facie case, the burden shifts to the defendant to provide a non-discriminatory reason for the adverse employment action, then shifts back to the plaintiff to provide evidence that the given reason is pretextual. *See Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 n.14 (3d Cir. 2010); *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). Plaintiff's retaliation claims suffer from two fatal flaws.

First, Plaintiff fails to allege that she engaged in any protected activity that resulted in her termination. Although an informal complaint about discriminatory treatment may qualify as a protected activity, "the employee's 'opposition' to unlawful discrimination must not be equivocal [or vague.]" *Perry v. Harvey*, 332 F. App'x 728, 733 (3d Cir. 2009). Although the Complaint is

vague, Plaintiff's statement of facts and response to Defendant's motion for summary judgment clarifies that Plaintiff is claiming retaliation based on the November 16 meeting with Walsh. (Pl.'s Resp. at 5; Def.'s SOF at 4.) However, Plaintiff fails to establish that this meeting, or any other, was a "protected activity." Although the parties agree that Plaintiff complained about her team's caseload, there is no evidence that Plaintiff stated at the meeting that she believed she was being discriminated against on the basis of her race. In fact, Plaintiff advocated for more diverse clientele for herself and her Caucasian teammate, which makes it unlikely that she discussed the assignments being racially motivated. (*See id.* at 133.) Therefore, Plaintiff fails to establish that she engaged in any protected activity which resulted in her termination. *See Eldridge v. Municipality of Norristown*, App. A. No. 12-2882, 2013 WL 811956, at *3 (3d Cir. Mar. 6, 2013) (finding an email was not protected activity because "it did not allege any discrimination"); *Flax v. Delaware*, 329 F. App'x 360, 364 (3d Cir. 2009) (concluding that complaint which did not explicitly mention racial discrimination was not a protected activity).

Second, even if Plaintiff established a prime facie case of retaliation, she provides no evidence that Central's stated reason for terminating her is pretextual. Since Defendant claims that it terminated Plaintiff because of her unprofessional behavior, the burden shifts back to Plaintiff to provide evidence from which a fact finder could reasonably infer that Central's justification is merely a pretext for discrimination. *See Burton*, 707 F.3d at 426. Plaintiff concedes that she could not work collaboratively with her teammate, and that her teammate complained about her unprofessional behavior to the team's supervisor. (Def.'s SOF ¶ 29.) She does not deny that, on November 2, 2010, she fought with Larkin at a client-attended event, then continued the screaming argument in the office despite Roznowski's attempts to calm Plaintiff and Larkin. (*Id.* ¶¶ 31-32.) She also admits that

8

Roznowski and other colleagues reported this behavior to Walsh, and that Roznowski and Walsh concurred that Larkin and Bordley should be terminated at that time. (*Id.* ¶¶ 33-34.) However, the human resources director suggested a written warning instead. (*Id.* ¶ 34.) Plaintiff also agrees that, contrary to Central's policy, she refused to sign the written warning given to her, and instead insisted on writing up an alternative warning which omitted specifics of the incident. (*See id.* ¶¶ 35-38.) Additionally, when Roznowski refused to meet about the written warning immediately, Larkin and Plaintiff became upset and argued with Roznowski in front of colleagues at the office again. (*Id.* ¶ 40.) As a result of this behavior, Central claims that it decided to terminate Plaintiff on November 11, contrary to Plaintiff's claim that Central terminated her as a result of her complaints at the November 16 meeting. (*See id.* ¶ 42.)

Although Plaintiff admits all of her inappropriate behavior, she still argues that Central's assertion that it fired Plaintiff because of her behavior is pretext. To support this proposition, Plaintiff argues that none of the notes Central employees took about the incident mention that Central decided to fire her before the November 16 meeting. This is inadequate. Plaintiff provides the Court with no reason why any party would include the decision to terminate Plaintiff in notes that documented Plaintiff and Larkin's incident in the office. Nor has she pointed to any policy or paperwork that Central should have filled out upon reaching the decision to terminate her on November 11. She also fails to name any colleagues who engaged in similar behavior but were not terminated; in fact, Larkin, the only similarly situated therapist discussed, resigned two days after Central issued Larkin and Bordley the written warning. Therefore, the Court finds that Plaintiff failed to bear her burden of refuting Defendant's given reason for her termination. *See Titus-Morris v. Banc of Am. Card Servicing Corp.*, App. A. No. 12-3144, 2013 WL 363467, at *4 (3d Cir. Jan. 31, 2013)

(upholding dismissal when plaintiff did not dispute underperforming and failed to provide evidence that defendant terminated her for any other reason); *Olivieri v. Cnty. of Bucks*, App. A. No. 11-4130, 2012 WL 5235684, at *5 (3d Cir. Oct. 24, 2012) (finding dismissal of discrimination claims appropriate when representative for defendant testified that decision was based on employee's infractions and not protected activity, and plaintiff failed to provide evidence to contrary).

### C. Hostile Work Environment Claim

Defendant also seeks to dismiss any hostile work environment claim asserted by Plaintiff. However, the Court finds that Plaintiff is not asserting such a claim. Although the Complaint offhandedly refers to Plaintiff experiencing a "hostile work environment," her summary judgment response fails to address any hostile work environment claim, fails to cite any case law to support a hostile work environment claim, and never rebuts any of Defendant's arguments regarding dismissal of any hostile work environment claim. She also does not address, as is required for a hostile work environment claim, what conduct constituted "severe or pervasive" discrimination. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Therefore, the Court concludes that Plaintiff has not raised a hostile work environment claim.

## IV. CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion for summary judgment. An Order consistent with this Memorandum will be docketed separately.